IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANNE GRESSER, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No. CCB-12-0987 |
| WELLS FARGO BANK, N.A., | * | |
| Defendant. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

This Memorandum Opinion addresses Plaintiffs' "Motion for Partial Waiver of Defendant Wells Fargo Bank, N.A.'s Attorney-Client Privilege and Attorney Work Product and to Compel Production of Documents [Responsive] to Request No. 19" ("Motion to Compel") (ECF No. 133-1).[1] Having reviewed the parties' submissions,[2] I find that no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Plaintiffs' Motion to Compel is DENIED.

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

KH Funding was a sub-prime mortgage lender and bond issuer that issued Series 3 Senior Secured Investment Debt Securities and Series 4 Subordinated Unsecured Investment Debt Securities ("the notes") to Plaintiffs. (ECF Nos. 72 at 1-2 & 77 at 4). Pursuant to an indenture between KH Funding and Defendant Wells Fargo Bank N.A. ("Wells Fargo"), Wells Fargo undertook a number of duties as indenture trustee. These included the duty to exercise their

---

[1] On October 18, 2013, Judge Blake referred this case to me for all discovery and related scheduling matter pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302. (ECF No. 134).

[2] I have considered all of the submissions of the parties included in the Local Rule 104.7 Certificate (ECF No. 133). I have not considered Wells Fargo's Surreply (ECF No. 146-2) and will deny Wells Fargo's Motion for Leave to File a Surreply (ECF No. 146).

rights and powers as an indenture trustee "as a prudent man would exercise or use under the circumstances in the conduct of his own affairs" in the event of default to protect the value of the notes. (ECF No. 77 at 4). In 2009, Wells Fargo retained the law firm of Thompson Hine LLP ("Thompson Hine"), in part, to seek advice as it executed its duties as the indenture trustee under the contract with KH Funding. Plaintiffs' lawsuit alleges that Wells Fargo breached its contractual duties as the indenture trustee by failing to act according to the "prudent man" duty of care.

In October 2012, Plaintiffs served document production requests on Wells Fargo. Wells Fargo responded in December 2012. From December 2012 through February 2013, by written correspondence and telephone conferences, the parties attempted to resolve what has become the present discovery dispute. In May 2013, Wells Fargo produced a privilege log that listed documents withheld on the basis of attorney-client privilege and the work-product doctrine. Plaintiffs' Motion to Compel was served on Wells Fargo on September 3, 2013.[3]

## II. DISCUSSION

The Court's jurisdiction lies in diversity of citizenship, pursuant to 28 U.S.C. § 1332. Maryland law governs both of the breach of contract claims in the Amended Complaint. Rule 501 of the Federal Rules of Evidence provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Accordingly, Maryland law, which supplies the rule of decision, also governs the applicability of the attorney-client privilege. With respect to the work product doctrine, which is not a privilege, but a

---

[3] Local Rule 104.8.a requires that motions to compel be served "within thirty (30) days of the party's receipt of the response." Here, Plaintiffs' Motion to Compel was served well after thirty days had passed. I decline to deny Plaintiffs' Motion on this basis, however, because the parties conferred with one another on a number of occasions between the time that Wells Fargo's responses were served and the service of Plaintiffs' motion. Additionally, I can discern no prejudice to Wells Fargo as result of Plaintiffs' delay.

2

qualified immunity from discovery, federal law applies. *See Continental Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 769 (D. Md. 2008) (collecting cases).

Federal Rule of Civil Procedure 34 governs document production requests. Pursuant to Rule 34, a party may request that the opposing party "produce and permit the requesting party . . . to inspect, copy, test, or sample" relevant documents, electronically stored information, and tangible things that are within the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The party served with a document production request may object to the request if a legitimate basis for doing so exists. *See* Fed. R. Civ. P. 34(b)(2). Thus, a party may object that a document production request exceeds the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1); that it should be denied for the grounds stated in Fed. R. Civ. P. 26(b)(2)(C); that it impermissibly requests privileged or work product material, *see* Fed. R. Civ. P. 26(b)(3); or that documents should not be produced without implementation of a protective order, *see* Fed. R. Civ. P. 26(c).

Federal Rule of Civil Procedure 26(b)(2)(C) "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010). Under that rule, a court, acting *sua sponte* or at a party's request, "must limit the frequency or extent of discovery" if: (i) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (iii) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

## A. The Fiduciary Exception to the Attorney-Client Privilege

Maryland has "adopted Wigmore's test for deciphering the existence and scope of an attorney-client privilege":

> (1) Where legal advice of [any] kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected, (7) from disclosure by himself or by the legal adviser, (8) except the protection [may] be waived.

*Greenberg v. State*, 421 Md. 396, 409 (2011) (internal citations omitted).

"Generally, the attorney-client privilege bars compelled disclosure, without the client's consent, of attorney-client communications made in confidence between the attorney and client." *Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 690 (2000). The privilege is "grounded in the public policy of encouraging a client to consult freely with and seek legal advice from an attorney without fear of the attorney being forced to testify or produce evidence as to the confidences in various judicial or other proceedings." *Id*.

The "burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 338 (4th Cir. 2005). "When a party relies on a privilege log to assert [the attorney-client privilege or the work-product doctrine] the log must as to each document set forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) (internal quotation omitted). Here, Wells Fargo has produced a privilege log that identifies the date of creation or transmission of each document withheld, its author, its recipients, a summary of the contents of the document, and the privilege asserted. (*See* ECF No. 133-4). I am satisfied that Wells Fargo has met its burden of demonstrating that the attorney-client privilege applies.

When a party makes a *prima facie* showing of attorney-client privilege or work-product protection, the party asserting an exception bears the burden of establishing that the exception applies. *See In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 Fed. 342, 352 (4th Cir. 1994). Here, while Plaintiffs do not appear to dispute that the documents on Wells Fargo's privilege log are protected by the attorney-client privilege, they do contend that an exception to this privilege precludes Wells Fargo from asserting it against Plaintiffs. The "fiduciary exception" to the attorney-client privilege, where it has been found to apply, limits the extent to which the attorney-client privilege can be asserted against a trust's beneficiaries by a fiduciary. The Supreme Court recognized in *United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2322 (2011) that "[t]he leading American case on the fiduciary exception is *Riggs Nat. Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709 (Del. Ch. 1976)." In *Riggs*, the beneficiaries of a trust alleged that the trustee had breached his duties in administering the trust. 355 A.2d at 710. The beneficiaries sought to compel a legal memorandum, withheld on the basis of attorney-client privilege. The memorandum contained privileged communications related to the administration of the trust. *Id*. *Riggs* held that the trustee had obtained the legal advice in question as a "mere representative" of the beneficiaries of the trust, and that the beneficiaries were the "real clients" of the attorney, and therefore, the holders of the attorney-client privilege. *Id*. at 711-12. This determination was based on a number of factors:

> (1) when the advice was sought, no adversarial proceedings between the trustees and beneficiaries had been pending, and therefore there was no reason for the trustees to seek legal advice in a personal rather than a fiduciary capacity; (2) the court saw no indication that the memorandum was intended for any purpose other than to benefit the trust; and (3) the law firm had been paid out of trust assets.

*Jicarilla Apache Nation*, 131 S. Ct. at 2322.

The third factor was an important consideration for *Riggs*, as "legal advice procured at the trustee's *own* expense and for his *own* protection" would remain privileged. *Id*. (internal quotation omitted). *Riggs* found that, at the time the memorandum at issue was prepared, there were "no proceedings requiring the trustees to seek legal advice personally" and no record of "allegations of litigation, or even threats of it, against the trustees." *Id*. at 711. Furthermore, *Riggs* found that the trustees paid for the law firm that prepared the memorandum "out of the trust assets . . . [which was] in itself a strong indication of precisely who the real clients were." *Id*. at 712. *Riggs* reasoned that the "true beneficiaries" of the legal advice contained in the memorandum were the beneficiaries of the trust, and stated:

> As a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that He is personally being served. And, the beneficiaries are not simply incidental beneficiaries who Chance to gain from the professional services rendered. The very intention of the communication is to aid the beneficiaries. The trustees here cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege. The policy of preserving the full disclosure necessary in the trustee-beneficiary relationship is here ultimately more important than the protection of the trustees' confidence in the attorney for the trust. . . . The fiduciary obligations owed by the attorney at the time he prepared the memorandum were to the beneficiaries as well as to the trustees. In effect, the beneficiaries were the clients . . . as much as the trustees were, and perhaps more so.

*Id*. at 713-14.

In reaching this holding, *Riggs* distinguished an earlier case, *In re Prudence-Bonds Corporation*, 76 F. Supp. 643 (E.D.N.Y. 1948). *Riggs* found that "[t]he *Prudence-Bonds* case involved an indenture trustee for an issue of corporate bonds," and in such a case "the rights involved are not alone the rights of a bondholder but of all parties to the Trust Agreement." *Id*. at 714. While the "trustee was the actual client" in *Prudence-Bonds*, *Riggs* found that the actual clients were the beneficiaries of the trust. Other courts have recognized that *Riggs*'s holding is

limited, and does not apply to all cases that arise in the context of a trust. *See Matter of Heizer Corp.*, 1987 WL 19560, *2 (Del. Ch. Nov. 9, 1987) ("Accordingly, I am not prepared to read *Riggs* as authorizing the wholesale production of all privileged documents to the beneficiaries of a liquidating trust."); *see also* Mike W. Bartolacci et. al., *The Attorney-Client Privilege and the Fiduciary Exception: Why Frank Discussions Between Fiduciaries and Their Attorneys Should Be Protected by the Privilege*, 48 Real Prop. Tr. & Est. L.J. 1, 11-12 (2013) ("According to [*Riggs*], a trustee of a bond indenture is an actual client, but the trustee of a private trust, due to its unique fiduciary duties, is not.").

Even after determining that the beneficiaries were the "real client," *Riggs* still considered whether the "trustees' fiduciary duty to furnish trust-related information to the beneficiaries outweighed their interest in the attorney-client privilege." *Id*. *Riggs* ultimately found that the beneficiaries' interest in disclosure was "a weightier public policy than the preservation of confidential attorney-client communications," particularly where the communications occurred in the first place for the sake of the beneficiaries. *Id*.

In *Jicarilla Apache Nation*, the Supreme Court also stated that "[t]here are a number of widely varying relationships which more or less closely resemble trusts, but which are not trusts, although the term 'trust' is sometimes used loosely to cover such relationships." *Jicarilla Apache Nation*, 131 S. Ct. at 2323 n.4 (quoting Restatement (Second) of Trusts § 4, Introductory Note, p. 15 (1957)). A variety of relationships may be characterized as fiduciary or trust relationships, but the law as it applies to one fiduciary relationship may apply differently to another fiduciary relationship. *See id.*

Wells Fargo contends that Maryland's courts have not addressed the extent, if at all, to which the fiduciary exception to the attorney-client privilege applies in Maryland. (ECF No.

133-9 at 23). Plaintiffs cite to two cases in support of their argument that Maryland law supports the application of the fiduciary exception to the attorney-client privilege. (ECF No. 133-14 at 9-13). In *Ashcraft & Gerel v. Shaw*, 126 Md. App. 325, 350 (1999), the Court of Special Appeals held that "when two or more persons with a common interest engage an attorney to represent them with respect to that interest, the attorney privilege against disclosure of confidential communications does not apply between them." *Ashcraft & Gerel* is a joint representation case. A mother retained a law firm to represent herself and her minor son as plaintiffs with claims against medical providers in New York and Maryland. *Ashcraft & Gerel*, 126 Md. App. 325 at 333. The plaintiffs' law firm entered into a settlement agreement that provided for the mother to act as the trustee of her minor son's settlement funds. *Id.* at 334. Subsequently, a guardian ad litem appointed for the son alleged that the mother had failed to properly administer the settlement funds. The law firm appealed from an order of a lower court directing it to produce a number of communications between the firm and the mother concerning her son's cases. The Court of Special Appeals noted that while the communications at issue were privileged, the privilege could not be asserted against a former co-client under the "co-client exception" to the attorney-client privilege. *Id.* at 354. Because the mother engaged the law firm "to prosecute the civil cases for her and her son's damages . . . there could have been no reasonable expectation [on her part] that her communications with [the law firm] . . . would be kept confidential" from her son. *Id.* at 355. *Ashcraft & Gerel* noted that the case was one "where the two clients should have nothing to hide from one another." *Id.*; *see also See Neighborhood Development Collaborative* 233 F.R.D. at 441 ("[P]arties to a joint representation are barred from asserting the attorney-client privilege against one another.") (citing *Ashcraft & Gerel*, 126 Md. App. at 354).

The facts in this case are readily distinguished from those in *Ashcraft & Gerel*. First, this is not a joint or "co-client" case. Unlike *Ashcraft & Gerel*, Thompson Hine was retained by Wells Fargo alone; not by Wells Fargo *and* the note holders. The holding of *Ashcraft & Gerel* is not applicable for that reason alone. Furthermore, even assuming that Wells Fargo and the note holders could plausibly be construed as joint clients of Thompson Hine, Wells Fargo had an interest in keeping its communications with its attorneys confidential from the note holders. This interest in confidentiality is in stark contrast to the mother in *Ashcraft & Gerel*, who had no legitimate interest in keeping her communications from her son. It bears mentioning that the record indicates that by the time it retained Thompson Hine, Wells Fargo had received a number of communications from the note holders and KH Funding threatening legal action if it were to take any missteps. (ECF No. 133-9 at 10-12). Wells Fargo was entitled to seek legal advice and to expect that its communications with Thompson Hine would remain privileged and confidential. *Ashcraft & Gerel* does not lend any persuasive support to Plaintiffs' argument that the fiduciary exception applies in Maryland or that its application would otherwise be appropriate in this case. As Judge Williams wrote in *Neighborhood Development Collaborative*, the "mistaken (albeit reasonable) belief by one party that it was represented by an attorney" cannot "serve to infiltrate the protections afforded to another client." *Id*. at 441-42 (noting there is also a policy interest that "joint representations of clients with potentially adverse interests should be undertaken only when subject to very narrow limits").

In *Wells Fargo Bank, N.A. v. Konover*, No. 05-1924, 2010 WL 814894 (D. Conn. Mar. 5, 2010), the court held that a bank's communications with an attorney serving as a foreclosure trustee could not be withheld from the owner-borrower of the subject property. The court found that while "a Maryland court would not apply a blanket waiver exception to the attorney client

privilege, . . . [it] would examine each of the communications at issue to determine whether the attorney was acting as outside counsel for the client or was acting as the foreclosure trustee at the time the communication was made." *Id*. at *9. *Konover* noted that "Maryland substantive law recognizes that a foreclosure trustee owes a fiduciary duty to parties on both sides of the transaction, i.e., the mortgagor and mortgagee" and acts "for the benefit of all parties interested in the proceedings." *Id*. at *8.

*Konover* is also readily distinguished from the facts in this case and is of no assistance to the Plaintiffs' argument. Thompson Hine owed no duty to any client besides Wells Fargo. Unlike the attorney in *Konover*, Thompson Hine had no duty to act for the benefit of the note holders, and no duty to act as any kind of neutral party protecting the legal interests of all parties. Indeed, Thompson Hine would have been prohibited by ethical rules from revealing privileged communications to the note holders in this case. Where an attorney is under an obligation to act in the best interests of "both sides of [a] transaction," neither side of the transaction could reasonably expect their communications to remain privileged from disclosure to the other side, at least where the communications involved the transaction at issue. Here, under the facts presented, I am persuaded that Wells Fargo reasonably expected its communications with its attorneys to remain privileged and confidential.

Plaintiffs have been unable to supply any authority supporting their position that Maryland would recognize the fiduciary exception to the attorney-client privilege in this case. Moreover, the policy justifications Plaintiffs advance as to why the fiduciary exception applies are not compelling. Plaintiffs essentially argue that Thompson Hine's "real client" was not Wells Fargo, but the Plaintiffs. (ECF No. 133-14 at 13). While it is true that the Plaintiffs may have stood to benefit from the legal advice Wells Fargo received from Thompson Hine, that benefit

10

was indirect, and would have been owed to Wells Fargo discharging its obligations under its contract with KH Funding.[4] The need to protect Wells Fargo's privileged communications with Thompson Hine far outweighs any benefit the Plaintiffs might have indirectly stood to gain from the advice.

Wells Fargo retained Thompson Hine for legal advice related to its obligations under the indenture. Wells Fargo and Plaintiffs were not co-clients and Thompson Hine had no duty to act in the Plaintiffs' best interest. Accordingly, I find that no exception to the attorney-client privilege applies in this case that would entitle Plaintiffs to the communications they now seek. Because Plaintiffs have not met their burden of demonstrating that an exception to the attorney-client privilege applies, Plaintiffs' Motion to Compel is denied with respect to the attorney-client privileged communications.

### B. The Fiduciary Exception and the Work-Product Doctrine

Wells Fargo's privilege log indicates that all documents were withheld on the basis of the attorney-client privilege, and several documents were withheld on the basis of both the attorney client-privilege and the work-product doctrine. Because I have found that the attorney-client privilege protects all of the documents at issue from disclosure to Plaintiffs, I am not required to address the issue of whether the fiduciary exception applies to the documents Wells Fargo has designated as protected from disclosure by the work-product doctrine. Nonetheless, even if I were to reach this issue, the authority cited by Plaintiffs would not compel a different result.

---

[4] The Indenture provided that KH Funding would reimburse Wells Fargo for reasonable attorney's fees paid in connection with the discharge of its duties under the indenture. That Wells Fargo has a claim in KH Funding's bankruptcy case for the reimbursement of these fees is of no moment. Unlike the trustee in *Riggs*, Wells Fargo stood to be reimbursed by KH Funding for Thompson Hine's fees, and not out of any trust assets. (*See* ECF Nos. 133-2 at 12 & 133-9 at 8-9).

In *Solis v. Food Employers Labor Relations Ass'n*, the Department of Labor served administrative document subpoenas on certain ERISA benefit plans, and the plan administrators objected. 644 F.3d 221 (4th Cir. 2011). The court noted that "[a]nalogizing the ERISA fiduciary's role to the role of the trustee at common law, . . . courts have relied on one of two related rationales" in considering questions of privilege. *Id.* at 227. Under the first rationale, "the ERISA fiduciary's duty to act in the exclusive interest of beneficiaries supersedes the fiduciary's right to assert attorney-client privilege." *Id.* The second rationale reasons that "the ERISA fiduciary, as a representative of the beneficiaries, is not the real client in obtaining advice regarding plan administration and thus never enjoyed the privilege in the first place." *Id.* (internal quotation omitted). *Solis* held that "the fiduciary exception to the attorney-client privilege extends to communications between an ERISA trustee and a plan attorney regarding plan administration," but that the exception "is not without limits." *Id.* at 228. "[T]he application of the fiduciary exception to any particular communication remains a matter of context and content." *Id.* at 229 (internal quotation omitted). *Solis* found that the fiduciary exception applied because the documents at issue "relate to the Funds' administration, information which ERISA trustees have a fiduciary obligation to disclose in response to a subpoena from plan beneficiaries provided it does not involve a trustee's own legal defense." *Id.* at 231. *Solis* went on to note that the fiduciary exception applied to documents withheld on the basis of the work product doctrine and that "there is no legitimate basis on which to distinguish between the two privileges in the application of the fiduciary exception in the ERISA context." *Id.* at 233.

Even putting aside the differences[5] between cases that arise in the ERISA context and those that do not, *Solis*'s reasoning would not permit the application of the fiduciary exception to documents withheld on the basis of the work-product doctrine here. The privileged communications between Wells Fargo and Thompson Hine were not made for the benefit of the Plaintiffs. In the same way, the documents prepared by Thompson Hine in anticipation of this litigation were not prepared for the Plaintiffs' benefit, but for that of Wells Fargo and its counsel. Wells Fargo retained Thompson Hine for advice on the execution of its contractual duties as indenture trustee. Plaintiffs have not met their burden of demonstrating that the fiduciary exception applies to documents withheld on the basis of the work-product doctrine.

### C. Document Production Request 19

Plaintiffs seek copies of Wells Fargo's "policies, guidelines, standards and similar documents used to declare events of default and accelerate payment on indebtedness during the period from 2008 to 2010 when acting as a creditor" on its own behalf. (ECF No. 133-11 at 14). Wells Fargo objects to this request as not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome. (ECF No. 133-11 at 15).

I am not persuaded that Wells Fargo's internal policies concerning the declaration of events of default and acceleration of payment on indebtedness is within the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1). In addition, Plaintiffs' request, while arguably limited in scope to the years 2008 to 2010, remains incredibly broad. Because Wells Fargo is one of the

---

[5] *Solis* notes that fiduciary exception cases arising in the ERISA context differ from cases that arise in other circumstances. *Id*. at 232 ("The relevance of these decisions to the application of the fiduciary exception to work product protection in the ERISA context is questionable at best. . . . [T]he ERISA context differs from the corporate context and more closely involves fiduciary duties owed directly to participants and beneficiaries.")

world's largest banks (*see* ECF No. 133-9 at 38),[6] the Court is persuaded that the production of all of these policies, guidelines, standards and similar documents would impose a burden that is disproportionate to the benefit of production. *See* Fed. R. Civ. P. 26(b)(2). Plaintiffs' Motion to Compel is denied as to Document Production Request 19.

**III.    CONCLUSION**

For the reasons stated above, the Plaintiffs' Motion to Compel (ECF No. 133-1) is DENIED. A separate Order accompanies this Memorandum Opinion.

Date:   January 24, 2014                                       /s/
                                                               Timothy J. Sullivan
                                                               United States Magistrate Judge

---

[6] According to a Wells Fargo Quarterly Fact Sheet for the third quarter of 2013, "[a]mong all financial services companies, [Wells Fargo] ranked first in market value in the U.S. and third in the world, as of September 30, 2013."
https://www08.wellsfargomedia.com/downloads/pdf/about/wellsfargotoday.pdf (last accessed January 16, 2014).