# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ANNE GRESSER, ET AL.          :
                              :
    v.                        :    Civil No. CCB-12-987
                              :
                              :
WELLS FARGO BANK, N.A.        :
                              :

## MEMORANDUM

Plaintiffs Anne Gresser, Gregory Lizzi, Karen Spicknall, and Michael Zuck bring this action on behalf of a putative class of bondholders alleging that, under an Indenture with failed sub-prime mortgage lender KH Funding ("KH"), defendant Wells Fargo breached its duties as Indenture Trustee. Plaintiffs have filed a motion for class certification and to appoint class counsel.[1] A hearing was held on the motion on January 10, 2014. For the reasons set forth below, plaintiffs' motion will be denied.

## BACKGROUND

A full summary of the facts of this case is included in the court's October 22, 2012, Memorandum, and need not be repeated in its entirety here. (*See* Memorandum, ECF No. 72.) KH issued Series 3 Senior Secured Investment Debt Securities ("Series 3 Notes") pursuant to an indenture agreement with Wells Fargo, under which Wells Fargo acted as Indenture Trustee. (Pl.'s Mem., ECF No. 95-1, at 4.) Plaintiffs are a group of investors ("Noteholders") who purchased Series 3 Notes. (*Id.*)

On May 18, 2005, Wells Fargo, as Indenture Trustee, filed an original financing

---

[1] On March 7, 2014, Wells Fargo filed a motion to file a surreply, (ECF No. 158), that is opposed by the plaintiffs (ECF No. 161). The court will grant the motion because consideration of it does not alter the court's conclusion or analysis in this case.

1

statement with the Maryland Department of Assessment and Taxation to perfect a lien on collateral held by KH for the benefit of Series 3 Noteholders. (*Id.* at 6.) Under Maryland law, a financing statement is only effective for five years. Md. Code Ann., Comm. Law, § 9-515(a). Wells Fargo did not file a continuation statement before the expiration of five years causing Series 3 Noteholders' interest in KH's collateral to lapse. (Pl.'s Mem. at 6.) Wells Fargo filed a second financing statement on September 7, 2010. (*Id.*)

By the end of 2008, KH was falling behind on meeting redemption requests submitted by Series 3 Noteholders, and, in its April 2009 filings with the Securities and Exchange Commission, reported that it was facing continuing Events of Default as of the end of 2008 and had notified Wells Fargo. (2008 Annual Report, Form 10-K, ECF No. 61-11, at 10.) Under the Indenture, an "Event of Default" occurred when KH was unable to pay the principal or interest due on a Series 3 Note for thirty days or more. (Indenture, ECF No. 61-2, § 6.1.) On January 7, 2010, Wells Fargo notified Noteholders that an Event of Default was occurring. (Def.'s Opp'n, ECF No 116, at 8.). It had taken no action before that date. On February 5, 2010, Wells Fargo gave notice that it was accelerating Series 3 Notes. (*Id.*)

KH filed for bankruptcy on December 3, 2010. (*Id.*) Because Wells Fargo failed to properly secure Series 3 Noteholders' lien on KH assets with a properly filed continuation statement, KH sought to avoid application of the lien against its assets. (Pl.'s Mem. at 7.) Wells Fargo and KH eventually entered a stipulation agreement under which Series 3 Noteholders lost secured creditor status with respect to all of KH's assets except for two deposit accounts with a value of $55,000. (*Id.*)

Anne Gresser, claiming to be a Series 3 Noteholder, filed this action, (Compl., ECF No.

1), and later added Gregory Lizzi, Karen Spicknall, and Michael Zuck as plaintiffs. (*See* Am. Compl., ECF No. 94.) They bring two causes of action against Wells Fargo for breach of contract and/or breach of fiduciary duty. The first claim is based on Wells Fargo's alleged failure to declare an Event of Default and notify Noteholders of the default when KH began to fall behind on payments to Noteholders in December 2008. (Pl.'s Mem. at 2; Hearing Tr. 7:4-7.) The second claim is based on Wells Fargo's alleged failure to file a continuation of registration statement so that Series 3 Noteholders would be properly protected in KH's bankruptcy proceedings.[2] (*Id.*)

Plaintiffs now seek to certify a class of all individuals who held Series 3 Notes as of January 7, 2010, the date Wells Fargo declared a continuing Event of Default and notified Noteholders of it. (Reply, ECF No. 131, at 20; Hearing Tr. 25:15-27:19.) They exclude from the class any Noteholders who were employed by, served as a director of, or had a controlling interest in KH Funding or Wells Fargo. (Pl.'s Mem. at 4.) Although it is not clear from the class definition they offered in their motion, (*see id.*), the plaintiffs clarified at the hearing that Noteholders who held Series 3 Notes jointly with any of the above listed individuals are also excluded from the class.[3] (Hearing Tr. 75:20-76:19; *see also* Reply at 2.)

## ANALYSIS

A district court has "wide discretion" in deciding whether class certification is

---

[2] Because the court finds class certification is not warranted as to the plaintiffs' first cause of action, it also will not certify a class as to this second cause of action. *See Gunnells v. Healthplan Serv., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003) (noting courts can separate claims and certify only one or some). The two claims involve the same contract, and it would do little to save resources or further resolution of the case to have them proceed separately.

[3] The plaintiffs' class definition has evolved over time. In the memorandum accompanying their Motion for Class Certification, they defined the class as those that held Series 3 Notes as of February 5, 2010, the date Wells Fargo accelerated the accounts. (Pl.'s Mem. at 4.) Further, in that memorandum they mentioned nothing of excluding those individuals who held accounts jointly with directors, officers, employees, or others affiliated with KH or Wells Fargo. (*See id.*) It was only in their reply memorandum to Wells Fargo's opposition and at the hearing that the plaintiffs provided the definition referenced in the body of this memorandum. (*See* Reply at 2, 20; Hearing Tr. 25:15-27:19, 75:20-76:19.)

3

appropriate. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010) (quoting *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993)) (internal quotation marks omitted). Because "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" the court must engage in a rigorous analysis to determine whether the party seeking certification has "'affirmatively demonstrate[d] his compliance' with [Federal Rule of Civil Procedure] 23." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (citation omitted). The inquiry may require the court to "probe behind the pleadings," and "such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim." *Id.* (internal quotation marks and citation omitted).

Rule 23 sets out a two-step process for determining whether a class should be certified. First, the class must satisfy the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. If those requirements are met, the class must then satisfy at least one of the three sub-parts of Rule 23(b). *See Comcast*, 133 S. Ct. at 1432. Here, plaintiffs move for certification by relying on Rule 23(b)(3), which "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Advisory Committee Notes to 1966 Amendments to Rule 23*, 39 F.R.D. 69, 102-03 (1966).

The plaintiffs have not met their burden to demonstrate that the class meets every requirement of Rule 23 because the named plaintiffs are not typical of the rest of the class and they are not adequate representatives. In addition, common issues do not predominate and a

4

class action is not the superior means of litigating the case. Class certification will be denied.

## I. Typicality

Typicality requires named plaintiffs to have the same interests and suffer the same injury as the rest of the class. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). The named plaintiff's prosecution of the suit must advance the interests of the remaining class members. *Id.* at 466-467. In other words, "as goes the claim of the named plaintiff, so go the claims of the class." *Id.* at 466 (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)) (internal quotation marks omitted). Analyzing typicality requires a court to compare the plaintiffs' claims and defenses against those of the absent class members. *Id.* at 467; *see also Minter v. Wells Fargo Bank, N.A.*, 279 F.R.D. 320, 325 (D. Md. 2012) ("[T]ypicality asks whether the claims of the named plaintiff—and any defenses to such claims—are typical of the claims and defenses of the putative class."). Factual differences do not necessarily render a claim atypical, but the claims must be based on the same course of conduct and legal theory. *Minter*, 279 F.R.D. at 325; *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 217 (D. Md. 1997) ("A plaintiff's claim may differ factually and still be typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" (citation omitted)).

In this case, the named plaintiffs seek to prove Wells Fargo breached the Indenture by waiting too long to declare an Event of Default and accelerate payment on Series 3 Notes. It appears some class members believe Wells Fargo breached, however, not by waiting to declare an Event of Default, but by declaring one too early. (*See, e.g.*, Troyer Decl. Ex. 56, ECF No. 120-7 (email from Matthew Kirtland to Wells Fargo objecting to Wells Fargo's declaration of an

Event of Default in January 2010 and stating he believed sending notice of default to Noteholders was "an ill-considered and premature action."); Harris Dep. Part 2, ECF No. 116-2, at 149:15-150:11, 159:18-164:23 (discussing the many waivers some Noteholders provided, releasing KH of its obligations to make payments on Series 3 Notes, in an attempt to prevent Wells Fargo from declaring an Event of Default).) Thus, although all class members may claim that Wells Fargo breached the Indenture, the conduct constituting the breach under the two theories of liability is different and renders the named plaintiffs' claims atypical.[4]

In addition, some of the named plaintiffs' claims are subject to defenses not applicable to all class members. Although unique defenses against the named plaintiffs do not always preclude a finding of typicality, *see Hewlett*, 185 F.R.D. at 217, courts have found they do defeat typicality when they threaten to dominate the litigation, particularly when they go to the ability to prove a defendant's liability to the named plaintiffs, *see Wu v. MAMSI Life & Health Ins. Co.*, 269 F.R.D. 554, 563 (D. Md. 2010) (finding typicality did not exist, in part, because the named plaintiff faced a waiver defense in her breach of contract claim); *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 529 (D. Md. 2001) (finding unique defenses defeated typicality where one named plaintiff may not have been a member of the class or suffered injury and the other faced questions of causation and of whether she could invoke the insurance policy under which she sought recovery).

Some of the defenses raised in this case go to the named plaintiffs' ability to individually hold Wells Fargo liable and thus further undermine typicality. Anne Gresser faces a substantial

---

[4] Gregory Lizzi, one of the named plaintiffs, signed a waiver in late 2009, along with many other potential class members, seeking to further delay Wells Fargo from declaring an Event of Default. By joining this action as a named plaintiff, however, he now appears to agree with the idea that Wells Fargo should have taken action earlier instead of later. Just because Lizzi has apparently changed his position as to Wells Fargo's responsibilities under the Indenture, however, does not mean the remaining class members who signed waivers have.

defense that she is not a class member because the account for which she seeks relief was not a proper Series 3 account. (Def.'s Opp'n at 13-15.) Gregory Lizzi signed a waiver allowing KH to remain in default with respect to his Series 3 account with the understanding that the waiver was necessary to stop Wells Fargo from taking action under the Indenture, (*see e.g.*, G. Lizzi Dep. Part 2, ECF No. 118-2, at 178:2-183:13; Def.'s Dep. Ex. 124, ECF No. 125-25), giving rise to an argument by Wells Fargo that he waived his ability to bring a breach of contract claim under plaintiffs' theory of liability, (Def.'s Opp'n at 18, 47). Karen Spicknall is claiming interest on her account that Wells Fargo alleges was not authorized by the Indenture. (*Id.* at 19-20.) While other class members may face similar defenses by Wells Fargo, they are not representative of all class members' circumstances, and resolving these issues, especially if they are resolved in favor of Wells Fargo, will not resolve the claims of the entire class. Typicality is lacking.

## II. Adequacy of Representation

The named plaintiffs also have failed to demonstrate they will be adequate representatives of the class. "The premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard*, 155 F.3d at 338. The named plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (internal quotation marks and citation omitted). Rule 23(a)(4)'s adequacy requirement, therefore, "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). For a conflict to bar certification, it "must be fundamental" and "go to the heart of the litigation." *Gunnells v. Healthplan Serv., Inc.*, 348 F.3d 417, 430-31 (4th Cir. 2003)

7

(internal quotation marks and citations omitted). A conflict is not fundamental when "all class members 'share common objectives and the same factual and legal positions [and] have the same interest in establishing the liability of [defendants].'" *Ward*, 595 F.3d at 180 (alteration in original) (quoting *Gunnells*, 348 F.3d at 431). Further, a conflict must be more than speculative or hypothetical. *Id.* Often, this inquiry overlaps with that of typicality. *Wu*, 269 F.R.D. at 564.

There are several fundamental conflicts between the named plaintiffs and the class that render the named plaintiffs inadequate representatives and bar certification.[5] First, a conflict exists among class members as to the theory of Wells Fargo's liability. As discussed with respect to typicality, the named plaintiffs believe Wells Fargo declared an Event of Default too late under its Indenture obligations, while others made statements or signed waivers seeking to prevent Wells Fargo from declaring an Event of Default for even longer. The named plaintiffs cannot represent the interests of class members who hold the latter view. This is so because by advancing the named plaintiffs' theory of liability, members of the class that voiced their belief that Wells Fargo should wait longer to intervene than it did—whether by signing waivers for that purpose or otherwise—face defenses of waiver and estoppel that could prevent them from recovering at all. In addition, the fact that some members of the class signed waivers to prevent

---

[5] Wells Fargo also claims the named plaintiffs are inadequate because they lack sufficient understanding of their claims and because Anne Gresser lacks credibility. (Def.'s Opp'n at 55-58.) As to the first argument, the plaintiffs have demonstrated they are doing more than simply lending their names to the litigation, as they testified at their depositions that they understood the claims in the case to center on Wells Fargo's alleged failure to adequately protect Noteholders, (*see, e.g.*, A. Gresser Dep. Part 1, ECF No. 118-9, at 42:12-25), and they recognized their duties as class representatives, (*see, e.g.*, A. Gresser Dep., ECF No. 131-2, at 133:8-21.). *See Gunnells*, 348 F.3d at 430 ("It is hornbook law . . . that '[i]n a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.'" (citation omitted)). As to Anne Gresser's credibility, however, there is some question as to whether she disclosed all of her dealings with KH, (*see* Def.'s Opp'n at 28-29; Troyer Ex. 88, ECF No. 120-42), information likely relevant in this case. *See Monroe v. City of Charlottesville*, 579 F.3d 380, 385 (4th Cir. 2009) (noting that a lack of credibility is grounds for denying certification); *Smyth v. Carter*, 168 F.R.D. 28, 33 (W.D. Va. 1996) ("[I]f the named plaintiffs are evasive, untruthful, or lack credibility, this weighs heavily against them as adequate class representatives.").

Wells Fargo from stepping in undercuts the claim of other members of the class that a prudent person—the standard imposed by the Indenture, (Indenture § 7.1)—would have stepped in earlier. Although the prudent person standard is objective, the Noteholders' conduct would still be relevant to determining its requirements. The named plaintiffs' interests in advancing their claims are thus directly opposed to those of other class members, and vice versa. Such a fundamental conflict precludes certification.

Other conflicts exist as well. According to Wells Fargo, the account for which Gresser seeks damages was fraudulently listed as a Series 3 account because it received interest at a rate not authorized for such an account, a transaction statement was never issued as required by the Indenture, and a subscription agreement was never signed. (*Id.* at 13-15; *see also* Gresser Account Statement, November 2008, Troyer Ex. 10, ECF No. 119-12 (listing the account as a Series 4 account); Gresser Account Statement, July 2009, Troyer Ex. 81, ECF No. 120-30 (listing the account as a Series 3 account for the period of December 2008 through July 2009); Indenture, ECF No. 61-2, §§ 2.1, 2.2 (stating that "[a] Security shall not be validly issued until a transaction statement executed by a duly authorized officer of the Company is sent to the purchaser" and describing the account interest rates and the process for changing such rates); KH Funding November 2008 Registration Statement, Dep. Ex. 34, ECF No. 124-34, at 4-5, 93 (listing the interest rates set for each type of Series 3 and Series 4 account and describing the subscription agreement requirement).)

Because plaintiffs only seek a fixed pool of damages,[6] to be distributed on a pro rata basis in proportion to the amount of total Series 3 Notes each Noteholder held, the amount available

---

[6] The plaintiffs clarified at the hearing on this motion that total damages would equal the amount KH lost between the date Wells Fargo allegedly should have declared an Event of Default and the date that it actually did so, (Hearing Tr. 9:4-23, 20:22-23:16), although they do not yet have an expert's calculation of these damages.

for distribution to each Noteholder increases with the exclusion of more individuals from the class. Thus, resolving whether Gresser had a valid Series 3 account gives rise to a conflict between her and the rest of the class, because if she is able to prove she can recover, despite lacking the allegedly required documentation, the damages available for the rest of the class shrinks significantly. While Gresser therefore has an interest in defining the class as those that were merely listed as Series 3 account holders on the Trustee Report, other class members have an interest in limiting it to only those Series 3 Noteholders who held Notes that complied with all requirements of the governing documents. This conflict goes beyond a mere dispute over how damages should be allocated, *see In re Medical Capital*, 2011 WL 2011 WL 5067208, at *9-10 (C.D. Cal. 2011) (finding such a conflict would not undermine adequacy), and instead to the very definition of the class. It therefore undermines Gresser's adequacy as a class representative.

For similar reasons, a conflict exists between Spicknall and the rest of the class, because she claims interest on her account that Wells Fargo argues was not authorized by the Indenture.[7] (Def.'s Opp'n at 19-20; Spicknall Transaction History, Troyer Decl. Ex. 13, ECF No. 119-15, at 3; Spicknall Account Statement, Def.'s Dep. Ex. 56, ECF No. 124-56 (noting the availability of bonus interest).) Like Gresser, if Spicknall is successful in arguing she is entitled to recover that interest, the pool of available damages for the rest of the class shrinks. Spicknall's claim to the additional, allegedly unauthorized interest is in direct conflict with the interests of the rest of the class and makes her an inadequate representative.

For all the foregoing reasons, fundamental conflicts exist between the named plaintiffs and members of the class and plaintiffs have failed to meet their burden to demonstrate that the

---

[7] Wells Fargo also claims Gresser received improper interest, but the plaintiffs have stated that Gresser will waive any right to such interest. (Reply at 12.)

adequacy requirement of Rule 23(a) is met.[8]

**III.     Predominance and Superiority**

In addition to failing to satisfy their burden under Rule 23(a), plaintiffs have failed to show they meet the requirements of at least one subsection of Rule 23(b). Plaintiffs move for certification under Rule 23(b)(3). To merit certification under Rule 23(b)(3), the plaintiffs must demonstrate that common issues predominate and that a class action is superior to other forms of litigation. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F. 3d 311, 319 (4th Cir. 2006). "The predominance requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a)," and requires that common questions of law and fact predominate over any individual issues. *Id.* (citation omitted). It guarantees that the class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Further, the predominance inquiry is a qualitative one, a question of whether the complexity of common issues outweigh that of individual issues, even if quantitatively there are more individual issues. *Gunnells*, 348 F.3d at 429. "The superiority requirement ensures that 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'" *Thorn*, 445 F.3d at 319 (quoting Fed. R. Civ. P. 23(b)(3)). When making its determination with respect to Rule 23(b)(3), the court must consider: "the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the

---

[8] Wells Fargo claims additional conflicts exist, but the court disagrees. First, Wells Fargo claims Gresser and Lizzi have a conflict because they received preferential payouts after the alleged breach that other class members did not receive. (Def.'s Opp'n at 53-54.) No class member received full payment, however, and plaintiffs made clear at the hearing that the payouts would be deducted from any final recovery. (Hearing Tr. 10:3-12:6.) The court does not find that the payouts create a fundamental conflict. *Compare In re Medical Capital*, 2011 WL 5067208 at *9-10 (finding no conflict where no class members had received full payment of past-due notes and interest and thus still had an interest in proving the defendant's liability even if some members would face a later off-set), *with Almonor v. BankAtlantic Bancorp, Inc.*, 261 F.R.D. 672, 676-77 (S.D. Fla. 2009) (finding a conflict where the named plaintiff had gained a "net benefit" from the defendant's wrongful conduct). Wells Fargo also claims potential conflicts exist between the class and Jin Suk Kim, (Def.'s Opp'n at 54), but plaintiffs have expressly excluded Kim from the class, (Reply at 2).

controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiffs claim that to the extent individual issues may be present in this case they do not qualitatively outweigh common issues and can easily be dealt with after Wells Fargo's liability is decided on a class-wide basis. The court disagrees. Although determining whether Wells Fargo breached the contract and caused KH's losses is a class-wide inquiry, its liability to some class members requires individualized inquiries into whether those class members waived, or are estopped from bringing, their claims.[9] The Fourth Circuit has recognized that, under Rule 23(b)(3), "when the defendant's affirmative defenses . . . may depend on facts peculiar to each plaintiff's case, class certification is erroneous." *Broussard*, 155 F.3d at 342 (internal quotation marks and citation omitted); *see also Gunnells*, 348 F.3d at 438 (finding class certification was improper where "it appears [the defendants'] affirmative defenses are not without merit and would require individualized inquiry in at least some cases").

Under Maryland law,[10] "[a] waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. [A]cts relied upon as constituting a

---

[9] Wells Fargo claims individual inquiries also are necessary into what each class member would have done with his or her investments once Wells Fargo provided notice of an Event of Default. The court understands the plaintiffs to be claiming, however, that Wells Fargo should not only have declared an Event of Default, but that doing so would have entailed essentially freezing all of KH's accounts and having Wells Fargo run the company, removing any ability on the part of Noteholders to take action with respect to redeeming or investing further in their Series 3 accounts. (*See* Hearing Tr. 7:24-8:8, 21:10-22:22.) To the extent such action was not required by the Indenture—it is unclear to the court where the Indenture contemplates such conduct—and action by each Noteholder becomes relevant to determining Wells Fargo's liability to that Noteholder, individual causation or mitigation issues would only undermine the propriety of class certification further.

[10] The Indenture is governed by Maryland law. (Indenture § 11.10.) The parties do not dispute that Maryland law would therefore control plaintiffs' claims.

12

waiver of the provisions of a contract must be inconsistent with an intention to insist upon enforcing such provisions." *Kiley v. First Nat'l Bank of Maryland*, 649 A.2d 1145, 1155 (Md. App. 1994) (second alteration in original) (quoting *Dahl v. Brunswick Corp.*, 356 A.2d 221, 230 (Md. 1976)) (internal quotation marks omitted); *see also Brendsel v. Winchester Constr. Co., Inc.*, 875 A.2d 789, 798 (Md. App. 2005). Waiver does not have to be direct and can "result from implication and usage, or from any understanding between the parties which is of a character to satisfy the mind that a waiver is intended." *BarGale Indus., Inc. v. Robert Realty Co., Inc.*, 343 A.2d 529, 533 (Md. 1975) (internal quotation marks and citation omitted). Similarly, Maryland law precludes parties from asserting rights against another party where the allegedly wrongful conduct by the defendant resulted from his reliance on the conduct or representations of the plaintiff. *Dahl*, 356 A.2d at 230-31.

Robert Harris, president of KH Funding, testified at his deposition that in 2008 and 2009, KH obtained oral and written waivers from a large number of Noteholders in an attempt to prevent Wells Fargo from taking action with respect to the Series 3 Notes. (Harris Dep. Part 2 at 149:15-150:11, 159:18-164:23; *see also* Def.'s Dep. Ex. 124; Def.'s Dep. Ex. 152, ECF No. 125-53.) In fact, the letter KH sent requesting written waivers in December 2009 expressly stated that the waivers were necessary to avoid Wells Fargo taking action under the Indenture. (Def.'s Dep. Ex. 124.) At least once, Harris conveyed to Wells Fargo that KH had obtained waivers. (*See* Def.'s Dep. Ex. 53, ECF No. 125-53.) In addition, Wells Fargo has proffered evidence that at least one Noteholder, Matthew Kirtland, sent Wells Fargo an email in February 2010 objecting to the actions it had taken in January 2010 and stating he believed sending notice of default to Noteholders was "an ill-considered and premature action." (Troyer Decl. Ex. 56.) Wells Fargo

13

does not claim all Noteholders submitted waivers or objected to Wells Fargo's conduct, however, and of those that did submit waivers, some were oral and some were written. Because of the differences among class members with respect to waivers, determining whether any class member waived her ability to bring a breach of contract claim, or is estopped from doing so, is not a question amenable to resolution by class-wide proof. *Compare Wu*, 269 F.R.D. at 561-62 (finding contract defenses like estoppel and waiver required individual inquiry based on the circumstances of the class members), *with Miller*, 2006 WL 2130640 at *7 (finding affirmative defenses like waiver and estoppel did not require individualized inquiry where defendant pled them as common across the class).

At the hearing, plaintiffs attempted to argue that Wells Fargo's proffered defenses were not legitimate in this case because plaintiffs are third party beneficiaries to the Indenture, not signatories. (*See* Hearing Tr. 13:13-19.) Such a claim is without merit. Although third party beneficiaries are not signatories to a contract, they take the contract subject to its terms and conditions. *Acciai Speciali Terni USA, Inc. v. M/V BERANE*, 181 F. Supp. 2d 458, 464-65 (D. Md. 2002). It cannot be that a third party beneficiary, just by his status as such, can demonstrate an intention to no longer enforce a contract against the promisor only to switch positions in litigation without consequence. Such an outcome would be inconsistent with basic contract principles. *See Wenfang Liu v. Mund*, 686 F.3d 418, 421 (7th Cir. 2012) ("[A] third-party beneficiary has the duties as well as the rights of a signatory to the contract." (internal citations omitted)); *Restatement (Second) of Contracts* § 309(4) ("A beneficiary's right against the promisor is subject to any claim or defense arising from his own conduct or agreement."). Wells Fargo has demonstrated that its waiver and estoppel defenses would require individualized

14

inquiries to resolve.[11] Plaintiffs' have not offered a response to this or any way in which the defenses could be resolved on a class-wide basis. The court finds that the defenses do not lack merit, and the record does not "affirmatively reveal that resolution of [them] on [the] merits may be accomplished on a class-wide basis," *Thorn*, 445 F.3d at 321. Thus, determining Wells Fargo's liability to all class members would only begin with common evidence as to breach, but would quickly require many mini-trials as to whether any class member could actually recover. Certification is improper in such a case.

Plaintiffs also have not met their burden to demonstrate that a class action would be a superior means of resolving the dispute. Although it may be true other lawsuits have not yet been filed, as plaintiffs claim, (*see* Pl.'s Mem. at 24), those class members facing waiver or estoppel defenses under the named plaintiffs' theory of liability have an interest in controlling the prosecution of their own actions separate from this one. If they are held to the adjudication of this case, they risk being barred from recovery on a theory that the record demonstrates may not be in line with how they viewed Wells Fargo's conduct. Plaintiffs do not sufficiently address this concern.

Further, there would be significant manageability problems with this case, if it moves forward as plaintiffs wish, due to the predominance of individual issues. *See* Fed. R. Civ. P. 23(b)(3); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) ("When individual rather than

---

[11] Wells Fargo claims other defenses, (*see* Def.'s Opp'n, at 47-48), that either can be resolved on a class-wide basis or do not appear to be viable such that there is not a sufficient likelihood they will require independent inquiries. First, Wells Fargo's statute of limitations defense is based on the fact that some holders knew about KH's financial troubles well before Wells Fargo's alleged breach. In a breach of contract action, however, the statute of limitations begins to run at the time of breach. *See Shailendra Kumar, P.A. v. Dhanda*, 43 A.3d 1029, 1035 (Md. 2012) ("In breach of contract cases, a cause of action typically accrues at the time of the breach."). The instant action was filed on December 8, 2011, just within the three year limitations period of when plaintiffs claim Wells Fargo breached the contract. Second, because a third party beneficiary takes subject to the defenses that could be mounted against the original signatory, *Shillman v. Hobstetter*, 241 A.2d 570, 577 (Md. 1968), Wells Fargo's unclean hands defense, based on the conduct of KH employees, would be amenable to class-wide proof.

15

common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." (quoting 7A Wright & Miller, Federal Practice and Procedure § 1778 at 56) (internal quotation marks omitted)). Plaintiffs suggest a number of ways in which the court could manage the individual issues, including bifurcating the trial into liability and damages phases, appointing a special master or magistrate judge to preside over individual proceedings, creating subclasses, or certifying the class with the understanding that the court can alter or amend its decision later.[12] (*See* Reply at 26.) The court recognizes its flexibility in structuring the litigation in this case. *See* Fed. R. Civ. P. 23(c)(1), (4), (5); *Gunnells*, 348 F.3d at 426 (noting that courts are to "take full advantage of the provision in [Rule 23(c)(4)]" (alteration in original) (internal quotation marks and citation omitted)). Such structuring, however, will not alleviate the manageability problems here.

Courts typically find bifurcation or the certification of only certain issues helpful where it will materially advance the litigation and where there is a clear line between the issues to be certified and those to be dealt with on an individual basis later. *See, e.g.*, *Windham*, 565 F.2d at 70-72 (finding bifurcation did not resolve manageability issues related to class certification where there was no clear line between the issues to be bifurcated). Here, a Noteholder's ability to recover cannot easily be separated into liability and damages phases. As discussed above, Wells Fargo's liability to any individual Noteholder turns not just on breach, but on whether or not a class member waived or can be estopped from bringing a breach of contract claim. Breach would only begin the inquiry, therefore, into Wells Fargo's liability to any single class member. For that reason, liability issues are not resolvable on a class-wide basis such that a clear divide

---

[12] The plaintiffs in their opposition to the motion for leave to file a surreply, however, state they have "never argued for partial certification." (Pl.'s Opp'n, ECF No. 161 at 3.)

between common and individual issues can be made along the divide between liability and damages. Splitting the case would thus do little to save judicial resources, one of the main purposes of certifying classes under Rule 23(b)(3).[13] The Fourth Circuit has recognized that "the issue of manageability of a proposed class action is always a matter of 'justifiable and serious' concern for the trial court and peculiarly within its discretion." *Windham*, 565 F.2d at 65; *see also Central Wesleyan*, 6 F.3d at 185 ("Issues of class action manageability are properly committed to the district court's discretion."). The court finds the individualized inquiries required to resolve all 800 class members' claims in this case would render a class action unmanageable. *See Farrar*, 254 F.R.D. at 74 n.4 (noting that "the difficulties in managing a class action in which the court would need to address individual issues over and over again would far outweigh any marginal increase in judicial efficiency that might result from class certification"). Plaintiffs have failed to satisfy the two prongs of Rule 23(b)(3).

## CONCLUSION

For the reasons stated above, plaintiffs' have failed to demonstrate that they have met each of the requirements of Rule 23 for class certification and their motion for class certification and appointment of class counsel will be denied. A separate order follows.

<u>March 31, 2014</u>                                    <u>/s/</u>
Date                                                    Catherine C. Blake
                                                           United States District Judge

---

[13] The court notes it may also pose Seventh Amendment problems to the extent determining waiver or estoppel issues would require the factfinder to revisit the parties' conduct related to breach. *See Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 552-54 (E.D. Va. 2000); *Arch v. Am. Tobacco Co., Inc.*, 175 F.R.D. 469, 493-94 (E.D. Pa. 1997).